## GARSON SHAMBURG v. W. H. ABBOTT, ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY.

Argued April 23, 1888—Decided October 1, 1888.

(*a*) The plaintiff, a shareholder in an unincorporated joint stock banking company, sold his shares in 1872, and the insolvency and suspension of the company occurred in 1873.

(*b*) After the suspension, the plaintiff, who had given no notice of the sale of his stock and of his retirement, was compelled to pay liabilities of the association accruing after he withdrew, when he brought assumpsit against the continuing shareholders to recover the moneys so paid.

(*c*) The defendants all pleaded non assumpsit, the statute of limitations, and payment with leave, etc. ; some of them a discharge in bankruptcy, in addition. One of them showed a separate composition under the provisions of the act of March 22, 1862, P. L. 167.

(*d*) The verdict was in favor of the defendants : On error to the judgment entered, *held :*

1. That, as this court had not been furnished with the pleadings in the case, and therefore, could judge of the issue in a general way only, and as the verdict was upon evidence sufficient to be submitted for consideration, no cause of reversal was apparent and the judgment was affirmed.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 300 January Term 1887, Sup. Ct.; court below, No. 42 May Term 1883, C. P.

On March 10, 1883, an action in assumpsit was brought by Garson Shamburg against Wm. H. Abbott, George Moody, W. W. Thompson, J. J. Holden, G. K. Anderson, Fred Bates, James B. Kerr, H. B. Porter, J. A. Cadwalader, F. W. Ames, W. W. Davis, Lyman Stewart (and others not served), late partners doing business under the firm name of The Citizens Bank of Titusville. The defendants pleaded, non assumpsit, non assumpsit infra sex annos, and payment with leave to give special matter in evidence; in addition, Davis, Anderson, Abbott and Stewart pleaded, discharge in bankruptcy.

The narr and pleas were not shown in the paper books furnished.

At the trial on February 16, 1885, at the close of the plaintiff's testimony, the court on motion directed the entry of a compulsory nonsuit. On writ of error to No. 227 January Term 1886, Sup. Ct., the judgment was reversed: Shamburg v. Abbott, 112 Pa. 6. At a second trial on April 6, 1886, there was a verdict for the plaintiff for $2,125.92. Subsequently, on June 14, 1886, a rule for a new trial was made absolute.

At a third trial on January 12, 1887, the case in substance was, that in 1870, the defendants, together with other persons who subsequently retired, formed a copartnership under the name and style of The Citizens Bank, and soon after organized under an unincorporated joint stock association, with a board of directors chosen, and began a banking business. The plaintiff became a holder of stock at or soon after the organization and served as a director, but on December 23, 1872, he sold and assigned his shares and retired. The association became insolvent and closed its doors on November 14, 1873. Suits were afterwards brought by depositors and other creditors against the plaintiff, with other copartners, and to these suits the plaintiff made defence that he had withdrawn from the association as stated, and was not liable for debts contracted before he became a member, or after the date of the sale of his

shares. The judgments of the Common Pleas were for the plaintiffs, upon both positions. One of the suits was taken to this court on writ of error, when the judgment therein was reversed, this court deciding that while an incoming partner was not liable for antecedent partnership liabilities, unless he had agreed to assume such liability, yet, on the sale of his shares and his retirement without notice thereof, his liability to subsequent creditors remained: Shamburg v. Ruggles, 83 Pa. 148. Under his liability thus fixed, the plaintiff paid personally a number of the creditors of the association whose claims originated after the sale of his shares, and then proceeded against the other members for a recovery of the amount of the claims so paid.

The questions which arose will best appear in the charge of the court below, CHURCH, P. J., which was in part as follows:

The Citizens Bank of Titusville was a partnership association; not a corporation, nor anything of that sort; but a huge partnership association, organized in 1870 for the purpose of doing a banking business. They issued certificates of stock to members, and it was provided in the articles of association that the stock should be divided into equal shares, and that persons would become members or copartners by virtue of subscribing to them, or becoming purchasers of certain shares of stock in the association. . . . . Its business management seems to have been confined to a board of directors; the number I do not recollect, nor is it of any importance. It was provided that a person could become a member of the association, either by subscription, or otherwise by purchase of stock and signing the articles of association, but when he sold his interest, he should assign it on certain assignment books, and that assignment should be approved by the board of directors. . . . . This was done for the protection of the remaining members, so that a solvent person, a good business man, a member of the firm, would not be permitted to sell his interest in the firm to some worthless, insolvent person, and thereby injure the chances of success, or render the liability of those in it greater. Therefore, it was well provided that in the going in and coming out of a person, they should follow the provisions set forth in the articles of association.

Charge of Court below.

In 1871, whether January or May of that year, is of very little importance, Dr. Shamburg became a member of this firm. Mr. Jackson testified that he was an original member, not an original subscriber to the stock, but that certain shares of stock had been secured for him, and awaited his pleasure, and the evidences of the stock were issued in the name of William H. Abbott, and when the plaintiff paid his money the stock was transferred by Abbott to Shamburg, and the money he paid went into the association account, and he was to all intents and purposes an original member of the firm. Whether he was an original member, or became so by purchase, is of very little importance.

It is certain he did not sign the articles of association. There is evidence he had them in his hand and some minutes of the proceedings of the directors, whether few or more, I do not know. The evidence of Mr. Jackson is for you upon that point. He had the opportunity to see, read and make himself acquainted with the contents of those articles of association. He did not sign them, but paid his money and took his certificate of stock. He had that certificate of stock ten months, until December 23, 1872, when he sold out to Mr. Abbott, his original vendor. Thereby he claimed to have retired from the association, and to remain no longer liable for the debts.

Thus things remained until September or October, 1873, when the bank closed its doors in consequence of the panic of that year and ceased to do business. The creditors undertook to pursue various members of the association, and amongst others pursued Dr. Shamburg, this plaintiff. Dr. Shamburg was held by this court and by the Supreme Court to be a partner of the association, so far as the creditors were concerned, because he did not avail himself of the requirements of the law upon the subject of a retiring partner, by giving notice of his retirement. You will bear in mind he was a director and advertised as such in the Titusville papers, but he neglected to have his name taken from the list of directors, and was held by the various creditors as one of the partners. . . . .

After having paid a great many debts, from 1874 down to 1878, or thereabouts, he claims in this suit that, as to the remaining partners, he legally and effectually went out of the partnership firm, even if he did not go out as far as the public

was concerned, and that, therefore, after he went out of the firm, he stood in the relation of surety as to the debts paid for the remaining members, who were his principals. The relation of principal and surety you understand. In ordinary language it is called bail. The plaintiff claims to be surety, or in other words, bail, for these persons. If he claims to have paid debts to persons, which the remaining partners were liable for, he has a right of action. The Supreme Court has held that, as to the remaining members of the firm, he did stand as surety if he paid debts he was not legally liable for, and went out according to the terms of partnership, or effectually went out from a legal point of view. . . . . The plaintiff therefore brought this suit on March 10, 1883, and under no circumstances, the statute of limitations having been pleaded, can he recover in this case for any claims or debts that he paid, even of his own showing, prior to March 10, 1877, and they are substantially withdrawn.

He claims that he paid from July, 1877, and during the year 1877, and as late as September, 1878, certain debts to various persons, aggregating in the whole about $1,965, and for that this suit is brought against the remaining persons, whom he claims to hold no partnership relation with, but to hold the relationship of surety, that is to this bank, his principals; that, in the language of the Supreme Court, when one person, being legally bound to pay the particular debt of another, the former in a certain sense occupies the position of surety for the latter, and if the surety pays the debt he has a right of action against the principal.

The defendants in this case have interposed various defences, and you will have to give attention to the defence of each individual. Wm. H. Abbott, George O. Moody, J. J. Holden, George K. Anderson, Frederick Bates, F. W. Ames, W. W. Davis, Lyman Stewart are defendants. All of them have been discharged in bankruptcy by the United States District Court. That being the case, they are free from any debt which was provable prior to their applications; these being some of those debts they are discharged from them, and your verdict will be for them in any event. James B. Kerr, Jacob Cadwalader and H. B. Porter claim to have been released by the plaintiff by virtue of a paper writing, which was executed

by the plaintiff on October 18, 1879, wherein this present plaintiff releases and discharges these persons, together with certain other persons, Purdon, Bronson and Archbold, who have not been sued, from liability on account of their alleged copartnership with the other defendants and the plaintiff, as the Citizens Bank of Titusville, from charges against them in the bill filed in this case. Therefore they claim to be released from any liability to the plaintiff, and this is a release from liability, and it is sufficient to discharge them, and your verdict will be in favor of Kerr, Cadwalader and Porter. This leaves of the defendants only one unfortunate individual, W. W. Thompson, upon whom the burden of this suit falls. He defends, not by any reason of discharge in bankruptcy or release. He claims to be discharged of these debts by the statute of limitations, and for part of the debts because the plaintiff discharged these persons and Purdon, Bronson and Anderson, not sued, plaintiff releasing them, they being the owners of about $35,000 stock of this bank, and defendant Thompson claims it releases him from $\frac{35}{100}$, or thirty-five per cent, of the indebtedness claimed against him by this plaintiff. And this, we say to you, is an effective claim. But the defendant claims more than that, and this, after all, gentlemen, together with one other point, are the impinging points in the case, so far as clearing W. W. Thompson from any liability to the plaintiff in this case is concerned.

There is an act of assembly read and cited in your hearing, which allows, upon dissolution of a partnership, certain members of the partnership being debtors to creditors, to agree with their creditors, and to pay them such portion as the creditors will take from the individual partner, and it thereby releases and discharges that person from these debts. It is the act of March 22, 1862, P. L. 167, and it provides that they "may make a separate composition or compromise with any one or all of the creditors of such copartnership firm; and such composition or compromise shall be a full and effectual discharge to the debtor or debtors making the same, and to them only, of and from all and every liability to the creditor or creditors with whom the same is made or incurred, by reason of his or their connection with such copartnership firm, according to the terms of such compromise."

This act provides that the compromise shall be in writing, and it shall not discharge the other members of the firm. It also applies to joint debtors.

W. W. Thompson has introduced evidence tending to show that he has compromised with and paid everything the creditors asked, and that he is completely exonerated from the creditors' debts they had against him as one of the members of the Citizens Bank; and these are the same persons the plaintiff claims for here. Also, that the compromise was made before the payments were made by the plaintiff. If that be true, we say to you that it is an exoneration of this defendant from these debts. If there was no debt existing against W. W. Thompson in favor of these creditors at the time Dr. Shamburg paid them, the principle sought to be invoked by the defendant is available. [When a certain person is legally bound to pay a debt for his principal, he occupies the position of surety, and if the surety pays the debt, he has a right of action. Thompson, being such surety, if he paid the debt himself and all that was demanded of him by the creditor, and had received a written exoneration, or written release from the creditor, there was no debt of W. W. Thompson that Dr. Shamburg, as surety, could pay.] [3]

It is also claimed, as an additional defence, by the defendant, that although Dr Shamburg, this plaintiff, claims now he went out in December, 1872, he did not go out, and that he did not stand in the relation of surety to the bank as principal; that he is still a member even as to them; although he was held and cannot but be held a member of the firm, so far as the creditors are concerned, that he is still held a member of the firm even so far as the other remaining members of the firm are concerned, because he did not go out in accordance with the rules and terms laid down in writing by the members of the association. Mr. Thompson testifies he was a member of the association, and he knew nothing of the fact or allegation that Dr. Shamburg left the firm at the time he is alleged to have done so, and he did not know anything about it until the bank closed business. Mr. Bates and Mr. Holden, members of the firm, also testified substantially the same thing There is no evidence the directors knew of it; he says he did not know of it as a matter of fact; that the plaintiff did become a member,

but there was a paper writing whereby persons became members, and no person should come in or go out of the firm without following the provision made necessary by the firm itself.

The plaintiff alleges that, inasmuch as he came into the firm without being required to sign the paper, and without the directors being called upon, and no one else either came in or went out in accordance with the terms of the paper, that paper became a dead letter; and that persons could not come in and go out without performing the things made necessary by the articles of association; and that, in either event, he never went in properly, in which event he was not in at all; that he did not go out properly, but it is claimed for him that every one else being permitted to come in and go out without signing these papers, he had a right so to do, and it is to all intents and purposes, as if he had done it in writing in accordance with the law.

Therefore you will perceive that there are two points for you to determine : Did the plaintiff go out of this firm, even as to the members of it? If he did not, then, there, of course, is an end of this case, because the present plaintiff can claim under no other right than being out of the partnership. If he remains in the partnership he cannot claim in this suit, because the very gist or gravamen of his action is that he is out of the partnership. If you find he did go in and come out by a sort of common consent, not being required to do what the paper requires, you come to the other matter, whether these debts, which Dr. Shamburg claims in this case, were paid by Thompson; and did he receive a release in accordance with the act of assembly of 1862, giving the debtor the privilege to compromise with his creditors; if he did, Dr. Shamburg could pay no debt for him, and did not stand in the relation of surety to him. . . .

For the purpose of making this a little more perspicuous to you, I will read the points the parties have presented.

The plaintiff requests the court to charge (inter alia) :

1. If the plaintiff was a copartner with the defendants prior to December 23, 1872, and on that date sold and transferred his interest in the copartnership to the defendant Abbott, and retired therefrom, but failed to give notice of his retirement, by reason whereof he was held liable for debts thereafter contracted by the defendants continuing the business of the firm, he stood in respect to such debts as between himself and the

Charge of Court below.

defendants in the relation of a surety for the defendants, and each of them owed to him the common duty of a principal to his surety, to indemnify and save him harmless from and against all and every part of such debts, and no one of them could escape from that duty by contract with or release from the creditors while they were pursuing the plaintiff, without at least giving notice thereof to the plaintiff in time to avail himself of such release.

Answer : This point, at least down as far as it concludes " from part of said debts," is answered in the affirmative, provided the plaintiff sold his interest in the copartnership, in the manner provided in the articles of association, or in such manner as legally terminated the partnership relation between himself and the remaining members of the firm. The remaining part of the point will be sufficiently answered in the answers to some of the defendants' points.[1]

2. If the plaintiff did not sign the articles of association when he acquired his interest in the Citizens Bank association, and all other persons acquiring interests therein after the original subscriptions were made, were permitted to do so without signing the said articles, and the plaintiff assigned and transferred his interest in the same manner that was practiced in the said association during its entire existence, then, as between himself and the defendants, the plaintiff either ceased to be a member of the association upon so assigning and transferring his said interest or never was such member.

Answer : I cannot say that there is evidence that any one of the defendants, directors of the association, unless it be Jackson and Abbott, permitted any persons to become members of the association without signing the articles of association, or to leave the firm except in the manner provided by the articles of association, but I leave it to you to find the fact under the evidence upon the subject, bearing in mind the fact that there is evidence that members did come and go without regard to the articles of association ; yet, if the plaintiff undertook to go out of the firm in a manner not authorized by the articles of association, and it was not known to the defendants, Thompson, Holden or Bates, until the final dissolution and closing up of the bank, I cannot say the plaintiff's relationship with Thompson and others ceased to be, and changed from copartner with them to that of surety.[4]

Arguments.

The defendants request the court to charge (inter alia):

2. That if the jury believe that the plaintiff attempted to retire from the copartnership without notice to or consent of his copartners, or a majority of them, or the approval of the board of directors, as required by the articles of association, the same was ineffectual to dissolve his copartnership relation with those of his associates who were not informed, and did not consent thereto, and as to all such persons his relation of copartnership continued until the dissolution of the concern in 1874.

Answer: This point is affirmed.[5]

7. That if they believe that the creditors of the defendant association, whose claims the plaintiff alleges he paid wholly or in part, had previously to such payment and after the dissolution of the copartnership, made composition and compromise with W. W. Thompson, one of the defendants, of their respective claims against said copartnership, and for a valuable consideration released and discharged said Thompson from all and every liability therefor or thereunder, the plaintiff cannot recover against Thompson for payments upon, or purchase of the residue of such claims.

Answer: This point is affirmed.[2]

The verdict of the jury was in favor of the defendants, and judgment was entered. Thereupon the plaintiff took this writ and specified as errors:

1. The answer to the plaintiff's 1st point.[1]
2. The answer to defendants' 7th point.[2]
3. The part of the charge embraced in [ ][3]
4. The answer to plaintiff's 2d point.[4]
5. The answer to defendants' 2d point.[5]

*Mr. Charles Heydrick* and *Mr. A. G. Church*, for the plaintiff in error:

1. It was determined in Shamburg v. Ruggles, 83 Pa. 148, that though the plaintiff had withdrawn from the partnership, he was liable as a partner for firm debts subsequently contracted, for the reason that he had failed to give proper notice of his retirement. And in Shamburg v. Abbott, 112 Pa. 6, it was further determined, that, though as between the creditors and the plaintiff the latter was liable as a principal, yet as be-

tween him and his former partners he stood in the relation of a surety, and that it was the duty of his principals, now the defendants in this case, to indemnify that surety against their debts. That duty was not performed by Thompson by obtaining releases of himself from creditors which retained in full vigor their rights against the plaintiff. The plaintiff may show the truth, that as between himself and Thompson, he was not a partner, and therefore a principal, and the act of March 22, 1862, P. L. 167, has no application. The object of the act was to enable creditors to hold out inducements to joint debtors to do equity with each other; not to work such iniquity as is involved in casting the burden of the debt upon the surety and releasing the principal. Moreover, in the part of the charge assigned for error, the learned judge told the jury that Thompson was a *surety*. This was undoubtedly a slip of the tongue, but how were the jury to know that?

2. Other assignments raise the question whether the plaintiff could go out of the partnership by the door he had entered it, if, indeed, as between himself and the defendants, he was ever a member thereof. The plaintiff was not one of the original members, and never signed the articles of association, but, sometime after the organization, had purchased shares through the cashier as his broker, from some person unknown to him. On his retirement, he sold his shares to Abbott, the president of the association, a member thereof and of the board of directors, but, as in the case of his purchase, there was no formal assent to the transfer by the board. Under these circumstances, as well as under the testimony of Jackson, tending to show an abandonment of the articles of association: Grove v. Donaldson, 15 Pa. 128; McKinney v. Reader, 7 W. 123, it would seem clear that after the plaintiff's sale of his shares to Abbott, he was not a member of the partnership, whatever his relation to it may have been before.

*Mr. Joshua Douglass* (with him *Mr. F. B. Guthrie* and *Mr. Julius Byles*), for the defendants in error.

1. This case is to be distinguished from Clarke's App., 107 Pa. 436, in this that under the articles of association the stock, shares and interests should be assignable and transferable only on the books of the association, with the assent of the board

of directors, and in the presence of the president or cashier. If the plaintiff's transfer was incomplete and irregular, it did not absolve him from his contract relation with his copartners, but left him standing legally a member of the corporation, and unable, therefore, to maintain this action of assumpsit against the other members: Cochran v. Perry, 8 W. & S. 262; Horton's App., 13 Pa. 67: Parsons on Partnership, 2d ed., 400; Klase v. Bright, 71 Pa. 186; McFadden v. Hunt, 5 W. & S. 468.

2. After Thompson had paid his proportion and been released by the creditor under the act of March 22, 1862, P. L. 167, Shamburg paid a part of the residue of some of the same debts and obtained his release. But he paid nothing for Thompson, he was not surety for Thompson in any sense. Moreover, if a creditor who had released Thompson had brought suit against the partners upon his claim, he could not have recovered against Thompson, and, if the creditor, suing in his own name, could not so recover, then the plaintiff, having paid the balance of the creditor's claim could not.

OPINION, MR. JUSTICE PAXSON:

A careful examination of this record fails to disclose any substantial error. It seems reasonably certain that all of the defendants, with the single exception of W. W. Thompson, were entitled to a verdict in their favor, by reason of either releases from the plaintiff or by their discharge in bankruptcy. And even as to Thompson, the jury have found in his favor upon sufficient evidence, and, for anything that appears, under proper instructions from the court. The plaintiff claims to have paid certain liabilities for Thompson, for which he, plaintiff, was surety. We are not furnished with the pleadings in the case, and can therefore only judge of the issue in a general way. Under such circumstances we will not discuss the rulings of the court upon this branch of the case. As far as we can judge from the imperfect character of the record we see no cause for reversal; the judgment, therefore, is

Affirmed.